# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.1:10CR387 |
| | ) | CASE NO.1:11CR491 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION & ORDER |
| | ) | |
| | ) | |
| JAMES C. DIMORA, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Defendant James Dimora has moved this Court, under Fed. R. Crim. P. 8 and 13, to consolidate the present case (Case No. 1:10CR387, hereinafter "Dimora I") with a recently filed action (Case No. 1:11CR491, hereinafter "Dimora II"). (Dimora I, Doc. No. 538.) Both the government and defendant Michael Forlani, a co-defendant in Dimora II, oppose the motion. (Dimora I, Doc. No. 548 and Dimora II, Doc. No. 45, respectively.) In a companion motion, Dimora requests that the Court continue the January 4, 2012 trial date currently set in Dimora I and set both actions for trial to begin on an unspecified date later in 2012. (Dimora I, Doc. No. 539.) The Court entertained oral argument on the consolidation motion at a pre-trial hearing on November 18, 2011, and is now ready to rule.

**Background**

Both criminal indictments pending against Dimora and other defendants stem from the same expansive federal investigation, conducted over a number of years,

into allegations of public corruption and conspiracy in Cuyahoga County, Ohio. To date, nearly 60 individuals, including public officials, judges, and private citizens, have been indicted as a result of the FBI's probe. Most have entered into plea agreements, some have stood trial, and a few others are still awaiting trial.

At all times relevant to the indictments in question, Dimora was one of three County Commissioners who had day-to-day responsibilities for the administration of the County government. In two separate indictments, Dimora, along with other defendants, is alleged to have conspired with other public officials and private citizens to commit various fraudulent acts. While the facts of Dimora I have been set forth in various opinions and orders, familiarity therewith is presumed, it is necessary to review the procedural posture of both Dimora I and Dimora II to properly frame the requests made by Dimora in the pending motions.

*Dimora I*

On September 14, 2010, the grand jury returned a multi-count indictment against Dimora and five other individuals. Defendant Michael Gabor was among the five indicted with Dimora and remains the only defendant, aside from Dimora, who has neither entered a plea nor gone to trial. By the Third Superseding Indictment, Dimora is charged with RICO conspiracy, conspiracy to commit mail and wire fraud and honest services mail fraud, Hobbs Act conspiracy, bribery concerning programs receiving federal funds, tax fraud, obstruction, and destruction of records.

Gabor was, at all times relevant to the indictment, employed by the Cuyahoga County Auditor's Office. He is charged (along with Dimora) with RICO conspiracy, conspiracy to commit bribery concerning programs receiving federal funds,

2

bribery concerning programs receiving federal funds, mail fraud and honest services mail fraud, Hobbs Act conspiracy, and conspiracy to obstruct justice. He is separately charged with conspiracy to commit mail fraud and honest services mail fraud, relating to former County Auditor Frank Russo's alleged efforts to compensate Joseph Gallucci for running a sham campaign against Russo in the 2006 Auditor's race.

The case was originally assigned by random draw to the undersigned, but was reassigned to the Honorable Kathleen O'Malley under Local Rule 57.9(b)(3), which addresses the reassignment of related cases. On October 5, 2010, the government and counsel for each defendant jointly moved for a continuance of the trial beyond the time frame set forth by the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). As grounds for the motion, the parties cited the voluminous discovery, which included hundreds of hours of wiretaps. As a further ground, the Court relied upon the fact that the government had represented that a superseding indictment was likely to issue in early spring 2011, which would add new charges, including a charge under the Racketeer and Corrupt Organizations Act, 18 U.S.C. § 1964 (RICO), and new defendants. The Court granted the motion, and set the matter for trial to begin September 12, 2011. In arriving at this date, the Court afforded additional time for discovery in light of the impending superseding indictment.[1]

The case was returned to the docket of the undersigned on January 21, 2011, following Judge O'Malley's appointment to a seat on the Federal Circuit Court of

---

[1] In her Order, Judge O'Malley explained that, on the current indictment, she expected the parties to be ready for trial by July, 2011. The September date was selected, however, because it was anticipated that the superseding indictment would add additional defendants, counts, and complexity to the case.

Appeals. The superseding indictment was not returned until March 30, 2011. It added a RICO charge, as well as various tax charges against Dimora, and also added a new defendant, Anthony Melaragno, who has since pled guilty.[2]

On April 26, 2011, defendant Gabor moved the Court to continue the September 12, 2011 trial date, and defendant Dimora filed a similar motion the following day. Following two separate hearings on these motions, the Court granted a further continuance, finding that the superseding indictment, which the Court noted had been returned much later than anticipated, added complexity to a case that the Court had already determined to be complex by adding additional schemes and law violations. The Court also found that, given the extensive discovery in this matter, to deny the defendants the additional time to prepare would result in substantial prejudice to the defendants. The Court set a trial date of January 4, 2012, and the trial is expected to last three months.

In preparation for the January 4th trial date, the parties have engaged in extensive discovery, which has included the review of over 44,000 wiretaps. Following a motion hearing in October 2011, the Court issued numerous opinions and orders resolving more than 20 pre-trial motions. The Court anticipates that it will be issuing rulings on the few remaining motions in the near future. The parties have also completed briefing on the motions in limine, and the Court shall conduct a hearing on these motions at the final pretrial conference scheduled for December 16, 2011.

---

[2] Melaragno entered a counseled plea of guilty to certain charges on September 14, 2011 (*see* Doc. No. 468), and is awaiting sentencing.

*Dimora II*

On October 20, 2011, a second indictment was returned against Dimora. A second individual, Michael Forlani, was also named in the indictment. Both men are charged with Hobbs Act conspiracy, substantive Hobbs Act violations, conspiracy to commit mail and wire fraud and honest services mail and wire fraud. Forlani is also charged with RICO conspiracy, conspiracy to tamper with a witness and witness tampering, conspiracy to commit bribery concerning programs receiving federal funds, and bribery concerning programs receiving federal funds. While the various fraudulent schemes laid out in the Dimora II indictment are distinct from those in Dimora I, the RICO conspiracy charged against Forlani is substantially similar to the RICO conspiracy charged against Dimora and Gabor in Dimora I.

Dimora II was originally randomly assigned to the docket of the Honorable James Gwin. Following a hearing, the matter was reassigned to the undersigned as a related case in accordance with Local Rule 57.9(b)(3). The Court conducted a hearing on November 18, 2011, at which time defendant Forlani moved the Court to continue the December 12, 2011 trial date set by Judge Gwin. In support of his motion, counsel for Forlani indicated that he had yet to receive any discovery in this matter, including the approximately 2 terra bytes of discovery that he anticipated would be produced by the government. Finding good cause for the motion, and after determining this case to be complex, the Court granted the motion, and Dimora and Forlani each executed waivers of the Speedy Trial Act, which run through December 31, 2012. No trial date has been set, and the government has indicated that it may seek a superseding indictment, which could add new counts and defendants to Dimora II.

Because Dimora II contains substantially fewer schemes than Dimora I, it is anticipated that a separate trial under the current indictment would only take approximately three weeks.

*The Pending Motions*

In his motion to consolidate, Dimora argues that the recently filed Dimora II indictment is the equivalent of a fourth superseding indictment in Dimora I. He further claims that the failure to consolidate the indictments and try them together in one trial will deprive him of his due process rights by requiring him to expend time and money to defend against substantially similar charges twice. In concert with his motion to continue, Dimora seeks a continuance of both actions until such time as both actions can be ready to go to trial. The government and defendant Forlani oppose consolidation. The government posits that, given the differences in procedural posture of Dimora I and Dimora II, the equities of the cases simply do not favor consolidation. Forlani insists that he would be substantially prejudiced by consolidation and that he intends to seek a severance if the Court is inclined to consolidate the two actions.

**Analysis**

Rule 13 provides: "The court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information." Fed. R. Crim. P. 13. Rule 13 raises the threshold question of whether the charges and defendants could have been charged together under Rule 8. *United States v. Halper*, 590 F.2d 422, 428 (2d Cir. 1978). Both Rule 8 and 13 seek the conservation of judicial resources in trying sufficiently connected or related offenses charged against one or more defendants in a

way that does not unduly prejudice the government or the defense. *See United States v. Burkley*, 591 F.2d 903, 919 (D.C. Cir. 1978), *cert. denied*, 440 U.S. 966 (1979).

Rule 8(a) contemplates the joinder of multiple offenses in a single indictment, while Rule 8(b) governs the joinder of multiple defendants. Because Dimora's consolidation motion contemplates the joining not only of separate indictments in which he is named, but also the joining of additional defendants from different indictments, the Court will evaluate joinder under Rule 8(b). *See United States v. Maling*, 737 F. Supp. 684, 702 (D. Mass. 1990) ("In  cases involving an indictment of multiple defendants and multiple offenses, as in this case, Rule 8(b) alone provides the appropriate standards for joinder."); *United States v. Chapple*, 2010 U.S. Dist. LEXIS 7406, at *4-*5 (E.D. Mich. 2010) (citing *United States v. Frost*, 125 F.3d 346, 389 (6th Cir. 1997) (further citation omitted) ("courts have traditionally held that Rule 8(a) applies only to a prosecution of a single defendant while Rule 8(b) applies exclusively whenever multiple defendants are involved, even if a defendant is contesting only the joinder of counts against himself"); *see, e.g., United States v. Richards*, 94 F. Supp. 2d 304 (E.D.N.Y. 2000) (applying Rule 8(b) to joinder of indictments against two different defendants); *compare United States v. Southwest Bus Sales,* 20 F.3d 1449, 1454 (8th Cir. 1994) ("[W]here all the defendants were charged with and tried on the same counts, and their challenge was to the  joinder of offenses rather than the joinder of defendants, we conclude that Rule 8(a) is applicable. In other situations involving multiple defendants, Rule 8(b) remains the appropriate vehicle by which to challenge the joinder of offenses or defendants.").

Rule 8(b) provides that multiple defendants may be charged together "if they are alleged to have participated in the same act or transaction, or the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b); *see United States v. Johnson*, 763 F.2d 773, 775 (6th Cir. 1985) ("Under Rule 8(b) multiple defendants may be joined only if a sufficient nexus exists.").

While there are subtle differences between the identification of the "enterprise" in each indictment,[3] it is apparent that the offenses charged arise from a single series of transactions. Of course, Dimora's presence as a named defendant is common to both indictments, but the similarities do not end there. There is substantial overlap between the alleged illicit conduct by the various participants in the plans and schemes. For example, the conduct charged in Counts 5 through 7 of Dimora II is substantially similar conduct to that charged in Counts 14, 15, 16, and 29 of Dimora I. Likewise Counts 2 and 3 of Dimora I include substantially similar conduct to Count 4 of Dimora II.[4] Additionally, Counts 2-4 of the Dimora II indictment charges Dimora and Forlani with participating in a bribery/honest services fraud scheme, and Count 12 of Dimora II charged Dimora and Forlani with a fraud conspiracy related to the Parma Public Schools. As these counts all charge Dimora with similar fraudulent behavior as charged in Dimora I, these counts could have been included in Dimora I.

---

[3] At the hearing, the government explained that the two indictments differ slightly in the manner in which the enterprise was charged. While Dimora I identified Cuyahoga County as the enterprise, for purposes of 18 U.S.C. § 1961(4), Dimora II charged an association in fact enterprise. Nonetheless, the purposes and manner and means were substantially similar.

[4] It is also clear from the indictments that there is substantial overlap in the evidence upon which the government will use to present each case. In fact, in certain instances, the two indictments rely upon the same intercepted calls to support different alleged illicit conduct. For example, Count 4 of Dimora I and Count 2 of Dimora II cite the exact same phone conversation in support.

To be sure, there are also distinctions between the two indictments. In addition to the slight difference in the charging of the RICO enterprise, the focus of each indictment is different. While Dimora I covers a variety of alleged schemes involving Dimora, Gabor, and other co-conspirators, Dimora II focuses exclusively on the alleged schemes involving Forlani and his business entities. Thus, while these actions are certainly related, there is a logical line of demarcation separating the two.

Still, it is clear that while the two indictments set forth different alleged fraudulent schemes, both arise out of the same series of transactions that were allegedly designed to benefit the various participants through a pattern of racketeering and fraudulent behavior. Noting that Forlani is an unindicted coconspirator in Count I of Dimora I, and that Dimora is an unindicted coconspirator in Count I of Dimora II, the government represented at the motion hearing that it could have included the Forlani schemes of Dimora II as part of a fourth superseding indictment in Dimora I. Because these offenses and defendants could have been joined in a single indictment, Rule 8 is satisfied.[5] *See, e.g., United States v. Cargo*, 1991 U.S. App. LEXIS 13706, at *5-*7 (6th Cir. June 24, 1991) (finding proper consolidation of actions where the defendants could have been joined in a single indictment); *Richards*, 94 F. Supp. 2d at 311; *but see United*

---

[5] An analysis under Rule 8(a) leads to the same conclusion. Under Rule 8(a), joinder of offenses is permissible if they are: "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Whether joinder [is] proper under Rule 8(a) is determined by the allegations on the face of the indictment." *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002) (citing *United States v. Frost*, 125 F.3d 346, 389 (6th Cir. 1997)). As set forth above, a review of each indictment reveals that "both constitute parts of a common scheme or plan" in that the schemes alleged in each indictment were part of a common conspiracy. *See, e,g,, United States v. Montgomery*, 358 Fed. Appx. 622, 628 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 2122 (2010) (drug conspiracy and drug distribution charges were properly joined with witness tampering charges because the offenses charged were connected with or part of a common scheme).

*States v. Persico*, 621 F. Supp. 842, 855 (S.D.N.Y. 1985) ("The enterprises alleged being distinct, separate entities, joint trial is unwarranted.").

The consolidation rule, however, is permissive, rather than mandatory. *See Burkley*, 591 F.2d at 919. The fact that Rule 8 may be satisfied by joining the defendants and the charges in one indictment does not necessarily end the analysis. "Because other considerations are also relevant to a decision on consolidation, the wording of the rule is permissive; all offenses which could be tried together there-under need not be." *Id.* Thus, the decision to grant or deny consolidation is left to the discretion of the trial court. *United States v. Qaoud*, 777 F.2d 1105, 1118 (6th Cir. 1985), *cert. denied*, 484 U.S. 832 (1987); *United States v. Haygood*, 502 F.2d 166, 169 (7th Cir. 1974).

While Rule 13 is available to both sides, it is often the government that seeks consolidation. In those cases, "[t]he trial court must also take into account the implicit, and often conflicting, policies of Rule 13 the promotion of the economical and efficient administration of criminal justice by the avoidance of needless multiple trials and the protection of criminal defendants from unfair prejudice that may be caused by the joining of indictments." *Halper*, 590 F.2d at 428; *see Burkley,* 591 F.2d at 919; *Richards*, 94 F. Supp. 2d at 310. "The district court should not exercise its discretion to consolidate where prejudice is apparent and consolidation could create needless litigation." Moore's Federal Practice, Criminal Procedure § 613.02.

Considerations of efficiency and the expenditure of limited resources weigh heavily against consolidation. While Dimora II was filed a matter of *weeks ago*, Dimora I has been pending since 2010 and is *weeks away* from trial. As previously mentioned, extensive motion practice is complete, many rulings have been issued, the last

of the opinions are already in draft, and the parties and the Court are now are gearing up for trial (with exhibits, witnesses and jury instructions deadlines having passed). In addition, significant resources have already been expended to assemble an extraordinarily large jury pool. In light of the amount of pretrial publicity Dimora I had received, the Court granted defendant Dimora's request to expand voir dire, which has included prospective jurors completing two questionnaires.[6] Approximately 160 prospective jurors are prepared to report to this Court between January 4 and 6, 2012 to begin their service.

In contrast, Dimora II is still in the early phases. As of the last hearing, Defendant Forlani had yet to receive the approximate 2 terra bytes of digitized discovery that has been promised by the government. In light of present pending motions, the Court has not even filed a Trial Order in this matter. When it does, it will include dates for all pre-trial hearings and the trial, itself. In addition, the Court will set other case management dates, such as deadlines for pre-trial and in limine motions. In other words, much work on the part of the parties and the Court must take place before this case is ready for trial.

Given the fact that Dimora II is months away from being ready for trial, a consolidation would necessarily require the Court to continue Dimora I, a case that has already been continued twice. Even Dimora admits that he and his counsel would require approximately four additional months to prepare to defend against the new charges contained in Dimora II. He would then have to repeat much of the trial preparation to,

---

[6] In October, 2011, the Court caused 700 juror questionnaires to be mailed to prospective jurors to screen out those individuals who could not commit to a three month trial. Approximately 160 pre-screened jurors reported to this Court in November, 2011 to fill out a second, detailed questionnaire designed to reveal any potential bias based on the nature of the charges and possible exposure to pretrial publicity.

once again, become "trial ready."[7] Moreover, the parties agree that folding the Dimora II charges into Dimora I would add approximately three weeks to an already lengthy trial.

To require the parties and the Court to get this close to trial only to have to regroup and prepare, again, for trial at a later date would require the expenditure of even more resources than trying the cases successively.[8] This is one of those unusual cases where consolidation of similar indictments would not promote efficiency and conservation of judicial resources. *See, e.g., United States v. Jordan*, 2008 U.S. Dist. LEXIS 59625, at *20 (E.D. Tenn. July 22, 2008) (consolidation denied where defendants in one action were ready for trial, while defendants in the other action were not prepared to proceed to trial). Moreover, the Court finds that consolidation of Dimora I and Dimora II, given the posture of Dimora I, the possible prejudice to other parties, and the resulting need to continue the trial does not outweigh the interest of the parties and the public in the trial of Dimora I as presently scheduled.

Still, Dimora argues that to try him in successive trials would deprive him of his due process rights. For support, he relies almost exclusively on *United States v. Am. Honda Motor Co.*, 273 F. Supp. 810 (N.D. Ill. 1967). In a prior action, the car manufacturer had pleaded nolo contendere and paid a fine under an indictment charging

---

[7] At the motion hearing, concerned by the volume of expected discovery, counsel for defendant Forlani stated that he did not believe that his client could be ready for trial before October, 2012. Counsel has since stated that his client will move for a severance if the actions are consolidated. Thus, a consolidation would result in additional litigation over severance, and the balance of equities may require the Court to sever Forlani and repeat the efforts of trying the same Forlani schemes in two different trials. Again, consolidation would not conserve resources.

[8] Dimora suggests that he does not have the financial resources to defend himself in two separate trials. However, having prepared for and defended against Dimora I charges, Dimora and his trial team would need only prepare for the discrete Forlani schemes contained in Dimora II, and the expense should be considerably less than his expenses associated with Dimora I. This is especially true since Dimora has received two terra bytes of discovery (presumably containing information that will be relevant to Dimora II) many months ago in conjunction with Dimora I.

conspiracy to commit price fixing in the Los Angeles area. Honda was subsequently charged in another Sherman Act conspiracy for price fixing allegations in the Chicago area (involving the same vertical price maintenance scheme between the parent corporation and Chicago dealerships). Rejecting the notion that the two actions involved different conspiracies (defined by the location of the participating dealerships), the district court dismissed the indictment on double jeopardy grounds, finding that the two indictments alleged the same, national conspiracy. *Id.* at 819.

The court in *Honda*, also, however, offered a second justification for the dismissal of the subsequent indictment: due process. Noting that due process is "a recognition of the requirement of fundamental fairness and fair play under a given set of circumstances[,]" and further observing that the government properly recognized "that its policy should be and is 'that several offenses arising out of a single transaction should be alleged and tried together and should not be made the basis of multiple prosecutions the court ruled that due process dictated that the second indictment be dismissed. […]." *Id.* at 819 (quoting *Petite v. United States*, 361 U.S. 529 (1960)). In reaching this conclusion, the court noted that subpoenas in both cases involved were virtually identical, requesting the production of large quantities of documents, and subsequent subpoenas were issued in other areas of the Country (though the government apparently determined that it would not prosecute the alleged price fixing in other areas and with other dealerships). The court concluded that "[t]his is precisely the sort of harassment which fundamental fairness and the due process clause prohibit. The Government is not the ringmaster for whom individuals and corporations must jump through a hoop at their own expense each time it commands." *Id.* at 820.

While the government has broad discretion in its charging decisions, *see Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001), and its decisions are entitled to a presumption of validity, *see United States v. Jackson*, 327 F.3d 273 (4th Cir. 2003) (internal quote and citation omitted), courts (like the court in *Honda*) have made clear that the government does not have the authority to charge in such a way that it impinges upon a defendant's rights, including the constitutional right to due process. *See Honda*, 273 F. Supp. at 820; *see, generally, Bragan*, 249 F.3d at 481. It is also clear from the ruling in *Honda* that the remedy for such a due process violation lies in the dismissal of the second indictment.

Thus, in the event that the government's decision to seek multiple indictments against Dimora constitutes a due process violation, and the Court makes no ruling at this time as to whether it does, Dimora may seek the dismissal of Dimora II as against him through the vehicle of a pre-trial motion in Dimora II. Such a remedy adequately protects his rights and removes the prospect of prejudice. At the risk of stating the obvious, if the multiple indictments violate due process, Dimora will never be tried on the second indictment, and the prejudice he argues can only be remedied by consolidation will never materialize.[9]

In an unauthorized supplement to his motion, Dimora raises, for the first time, the argument that the existence of Dimora II will have a chilling effect on the exercise of his right to testify on his behalf in Dimora I. (*See* Doc. No. 551.) Specifically,

---

[9] In his reply brief, Dimora argues for the first time that being tried on subsequent indictments would also constitute double jeopardy. Like the issue of due process, double jeopardy can be raised in a pre-trial motion in Dimora II. *See, e.g., Honda*, 273 F. Supp. at 819.

Dimora points to an October 25, 2011 letter written by government's counsel, which indicates that the United States intends to rely in Dimora I on certain evidence relating to payments Dimora made to Doan Pyramid, a company owned by Forlani. Because he believes that this evidence is relevant to the allegations in Dimora II, Dimora insists that any testimony he provides in Dimora I may compromise his defense in Dimora II. Dimora misunderstands the nature of the evidence in question and is, therefore, chasing a red herring.

The documents relating to payments made by Dimora to Doan Pyramid are, in no way, related to the bribes Forlani is alleged to have given Dimora, which help form the foundation for the charges in Dimora II. Instead, the seven documents in question relate to payments Dimora made *to* Forlani's company, and are, based upon the government's representations, relevant solely to show that Dimora had access to funds that were not in his bank accounts. (*See* Doc. No. 552 at 1-2.) It is apparently somewhat coincidental that the payments were made to a company owned by co-defendant Forlani. Such documents would have relevance even if they were made to other creditors to satisfy other debts or to other retailers or vendors to pay for products or services. Because they are unrelated to the charges in Dimora II, Dimora's testimony on these documents would have no bearing on the charges in Dimora II.

The government also represents, however, that it may seek to impeach Dimora, should he take the stand in Dimora I, with evidence that is directly related to the charges in Dimora II .This is more problematic and, while the Court believes that the rules of evidence permit this type of impeachment, it is inclined to prohibit the government from introducing acts directly related to the charges in Dimora II for

15

impeachment purposes should Dimora take the stand in Dimora I. The Court will further discuss this issue with the parties at the hearing on the motions in limine. Suffice to say that any such ruling should adequately address Dimora's concern and end any the dispute regarding this issue.

**Conclusion**

For all of the forgoing reasons, defendant Dimora's motion for consolidation is denied.[10] Because the Court will not consolidate these two matters, Dimora's motion to continue the trial date in Dimora I is also denied.

**IT IS SO ORDERED**.

Dated: December 16, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[10] Relying solely upon defendant Forlani's unsupported speculation that the Department of Justice has launched an investigation into matters relating to the transfer of Dimora II, Dimora suggests that the Court should not go forward on January 4th on Dimora I for the additional reason that "there is certainly a current investigation," and that "there is simply no reason to proceed in Case No. 1:10CR387 given the volume of other concerns when there is an investigation that involves this matter." (Doc. No. 47 at 7.) Any issues relating to the transfer of Dimora II has absolutely no impact on the Court's trial date in Dimora I and does not provide an alternate reason for continuing Dimora I.