UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.1:11CR491 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL FORLANI, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Defendant Michael Forlani has moved to have the present case reassigned to a district judge by random draw. (Doc. No. 46.) Because this case was properly transferred to the docket of the undersigned pursuant to the Court's local criminal rules, the motion is DENIED.

## I. BACKGROUND

On October 20, 2011, the grand jury returned a multi-count indictment against Forlani and co-defendant James Dimora. By the indictment, both men are charged with Hobbs Act conspiracy, substantive Hobbs Act violations, and conspiracy to commit mail and wire fraud and honest services mail and wire fraud. Forlani is also charged with additional crimes, including RICO conspiracy.

The indictment was one in a string of indictments growing out of a federal investigation, conducted over a number of years, into allegations of public corruption and conspiracy in Cuyahoga County, Ohio. Several of the earliest cases brought as a result of

the FBI's investigation were randomly assigned to the docket of the Honorable Kathleen O'Malley. By agreement of Judge O'Malley and the transferring judges, and pursuant to the Court's local rules, numerous subsequent cases arising out of the same FBI investigation that were originally randomly assigned to other judges were reassigned to Judge O'Malley as related cases. After Judge O'Malley was elevated to the Federal Circuit, these same cases were reassigned to the undersigned.[1] (*See* General Order 2011-5.)

The present case was originally randomly assigned to the docket of the Honorable James Gwin. In accordance with the Court's local rules, the government filed a notice of relatedness, identifying the present case as related to five other pending criminal matters, four of which were assigned to the docket of the undersigned. (Doc. No. 5.) Following a hearing on the matter, Judge Gwin transferred the present case to the undersigned as a related case under Local Criminal Rule 57.9(b)(3). (Doc. No. 30.)[2]

By his motion, Forlani challenges the reassignment of this case. He maintains that the transfer violates his right to due process because it prevents him from being tried by a randomly selected judge. He further claims that the government improperly manipulated the case in such a way as to steer the case to the undersigned's docket. (Doc. No. 46 at 10.) He, therefore, attacks the related case rule, itself, and the

---

[1] It should be noted that one of the cases transferred to Judge O'Malley as a related case, *United States v. Dimora*, et al., 1:10CR387, was originally randomly assigned to the undersigned.

[2] While Judge Gwin's order of transfer cites Local Rule 3.1(b)(3), Forlani acknowledges that "it appears that the order simply miss-cited the local civil rule providing for the transfer of related civil cases." (Doc. No. 46 at 6 n.2.) Local Civil Rule 3.1(b)(3) is the civil counterpart to Local Criminal Rule 57.9(b)(3).

2

application of the rule to the circumstances present in this case. His accusations do not find support in law or fact.

## II. LAW AND ANALYSIS

The present case was transferred to the undersigned under Local Criminal Rule 57.9(b)(3), which provides:

> Related cases. A case may be re-assigned as related to an earlier assigned case with the concurrence of both the transferee and the transferor District Judges. The United States Attorney's Office shall, in any case which is, or might be considered, related to another case, file a motion/notice with both District Judges advising the Court of the relationship. A new violation resulting in a federal indictment or information may be considered related to the previously filed case. The United States Attorney's Office shall notice the Court pursuant to this paragraph.

As Forlani notes, the obvious purpose of this rule is to conserve judicial resources by permitting a judge already familiar with the record of one case to also administer related cases, which are likely to share facts and legal issues. (Doc. No. 46 at 11.) Such a rule is especially beneficial in cases, such as the present one, where the records are voluminous.

"Congress has granted broad discretion to the federal district courts in the assignment of cases to particular judges." *United States v. Pearson*, 203 F.3d 1243, 1256 (10th Cir. 2000) (citing 28 U.S.C. § 137 ("The business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court.")). The Sixth Circuit has observed that "[l]ocal rules governing the assignment of cases are designed as internal housekeeping rules to promote the efficient operation of the district courts; they are not meant to confer rights on litigants." *Sinito v. United States*, 750 F.2d 512, 515 (6th Cir. 1984).

Nonetheless, Forlani complains that the application of this internal housekeeping rule has violated what he refers to as a "due process" right to have his case heard by a randomly selected judge. (Doc. No. 46 at 6.)  However, "a defendant does not have a right to have his case heard by a particular judge." *Sinito*, 750 F.2d at 514; *see United States v. Gallo*, 763 F.2d 1504, 1531 (6th Cir. 1985). "Nor does a defendant have the right to have his judge selected by a random draw." *Sinito*, 750 F.2d at 514; *see Cruz v. Abbate*, 812 F.2d 571, 574 (9th Cir. 1987) ("a defendant has no right to any particular procedure for the selection of the judge"); *see, e.g., United States v. Torbert*, 496 F.2d 154, 156 (9th Cir. 1974) (rejecting due process argument resulting from transfer of a case under the court's local rules). "Even when there is an error in the process by which the trial judge is selected, or when the selection process is not operated in compliance with local rules, the defendant is not denied due process as a result of the error unless he can point to some resulting prejudice." *Sinito*, 750 F.2d at 515 (citations omitted). Forlani has failed to meet this burden of demonstrating prejudice.

Instead, because many of the crimes charged in the indictment are alleged to have taken place in Cleveland, Forlani merely complains that any trial in this matter should take place before a judge in Cleveland, and cites Article III and the Sixth Amendment of the United States Constitution for support. The relevant portion of Article III provides for the right to a jury trial in the "State where the said Crimes shall have been committed […]." U.S. CONST. art. III, § 2, cl. 3. Likewise, the Sixth Amendment guarantees "the right to a speedy and public trial, by an impartial jury of the State and *district* wherein the crime shall have been committed […]." U.S. CONST. amend. VI (emphasis added). In addition, Rule 18 of the Federal Rules of Criminal Procedure

4

provides a statutory right to trial in "a *district* where the offense was committed." FED. R. CRIM. P. 18 (emphasis added).

"Although the Sixth Amendment and Fed. R. Crim. P. 18 require that a defendant's trial take place in the *district* where the crime was committed, there is no constitutional or statutory requirement that a defendant's trial take place in a specific courtroom or *division* within a federal judicial district." *United States v. Erwin*, 155 F.3d 818, 824 (6th Cir. 1998) (en banc) (emphasis in original) (citations omitted); *see United States v. McKinney*, 53 F.3d 664, 673 (5th Cir. 1995) (citing *United States v. Anderson*, 328 U.S. 699, 704-05 (1991)); *United States v. Bentancourt,* 734 F.2d 750, 756 (11th Cir. 1984); *see also United States v. Lipscomb*, 299 F.3d 303, 339 (5th Cir. 2002) ("There is no basis for inferring the existence of a constitutional right to trial within the division where a criminal defendant lives or where a crime was committed.").

The United States District Court for the Northern District of Ohio sits in Cleveland, Akron, Youngstown and Toledo. Thus, whether the case is heard in Cleveland or in Akron (where the undersigned holds proceedings) it will be heard in the State and district in which the crimes are alleged to have been committed. Further, while the above-cited authority makes clear that there is no right to be tried in any particular division within the district, both the Cleveland and Akron Federal Courthouses are located in the

Eastern Division of the Northern District of Ohio.[3] Thus, the reassignment of this case under the Court's local rules presents neither a constitutional, nor a statutory problem.

Forlani also takes issue with the related case rule on the ground that the rule fails to set forth what constitutes a "related" case. He cites to rules from the Northern District of Illinois and the Western District of Michigan, which each includes a definition for the term "related." Of course, because the local rules confer no rights upon litigants, Forlani cannot challenge the structure of any particular rule. Even so, the rules Forlani points to do not support his position because, unlike this Court's relatedness rule, the rules in question permit others outside of the court to play an active role in the transfer decision. The Illinois rule, for example, permits the parties to move for a transfer, thus allowing the parties to advocate for a particular forum. *See* N.D. Ill. LCrR 50.1. The cited rule from the Western District of Michigan allows the clerk of court to make the transfer without any input from the court. *See* W.D. Mich. LCrR 56. In both cases, explicit definitions are necessary to avoid either forum shopping by the parties, or improper transfers by clerk's office employees who may not be trained in the law.

In contrast, this Court's relatedness rule places the decision to transfer with the judges assigned to the cases in question. While the government is required to identify related cases, the rule does not permit the government to play any role in the decision to transfer. Further, rather than provide for a mechanical application of the related case rule by a clerk, as many districts' rules do, this Court's rule contemplates that the two judges will conduct a thoughtful review of the facts of each case, conferring with

---

[3] The federal courthouse in Youngstown, Ohio, is also located in the Eastern Division. The federal courthouse in Toledo, Ohio, is located in the Western Division of the Northern District of Ohio.

one another, if necessary, before the decision is made.[4] Because both the transferor and transferee judge must concur (as was done in this case), the rule provides the added protection that two jurists have concluded that such a transfer is warranted.[5]

Forlani's concern over the transfer of this case is not limited to the construction of the local rule, but also encompasses his belief that the government somehow manipulated the rule and the circumstances to steer the case to the docket of the undersigned. Forlani speculates that Judge Gwin was not willing to transfer the case until the government brought to his attention a possible connection Judge Gwin may have to the case that might affect his ability to hear the present case. Forlani charges that the government "threatened" Judge Gwin with the publication of this connection if he chose to retain the case. (Doc. No. 46 at 4.) According to Forlani, the information provided by the government compelled Judge Gwin to conclude that he must recuse himself from the case. Once this occurred, Forlani insists that Judge Gwin was divested of authority to transfer the case, and should have returned the case to the random draw for reassignment.

---

[4] In fact, prior to 1991, this Court's local rules provided for the automatic reassignment of related cases. To assist clerk's office employees in performing this administrative task, specific definitions of what constituted a related case were included in the relatedness rule. *See* former L.R. 7.09. When the rule was changed to limit such reassignment decisions to members of the Court, specific definitions were no longer necessary.

[5] While admitting that there is some "overlap" between the present case and a companion case already pending in this court, Forlani also questions the determination by Judge Gwin and the undersigned that the cases are related. The Court has written extensively on the relation between the present case and a companion case, *United States v. Dimora*, involving Forlani's co-defendant, James Dimora. (*See* Case No. 1:10CR387; Doc. Nos. 578, 616.) Both cases arise out of the same federal investigation, and the charged conspiracies share facts and conspirators. Further, Mr. Dimora is a defendant in both cases. In a prior hearing in this matter, the government related that the charges contained in the present indictment could have been brought in a further superseding indictment in the companion case, but that the government ran out of time to charge the new schemes involving Forlani in Case No. 1:10CR387. (November 18, 2011 Hearing Transcript, Case No. 1:10CR387; Doc. No. 571-2 at 38-39.) Thus, the legal and factual connections between the two cases are obvious. The present case also shares facts with other cases—stemming from the same Cuyahoga County investigation—that are currently pending with, or that already have been presided over by, the undersigned.

The record in this case reflects that Judge Gwin held a pre-trial hearing on November 4, 2011, at which time the government brought certain information to Judge Gwin's attention. Judge Gwin placed these matters on the record, and a transcript from the hearing was prepared and placed under seal. (Doc. No. 28.) The order of transfer reflects that Judge Gwin transferred the case to the undersigned as a related case. (*See* Doc. No. 30.) Because it is well settled that the court speaks through its record, *United States v. Garcia*, 312 F. App'x 801, 808 (6th Cir. 2009), *Odekirk v. Ryan*, 85 F.2d 313, 315 (6th Cir. 1936), *see, e.g., Hernandez v. Wilkinson*, No. 1:06-CV-158, 2010 U.S. Dist. LEXIS 108994, at *4 (N.D. Ohio Oct. 13, 2010) (citing *Odekirk*, 85 F.2d at 315), the Court must conclude that Judge Gwin chose not to recuse, and determined that the case should be transferred as a related case. *See, e.g., Torbert*, 496 F.2d at 516 (finding that a case was properly transferred under a local rule, despite the fact that sufficient evidence had been presented to the transferring judge to warrant his recusal, where there was no evidence that the trial judge had decided to recuse himself).

Forlani encourages the Court to look beyond the record and find that the government engaged in forum shopping, noting instances where other judges in this district have elected to retain certain cases arising out of the same FBI investigation relating to alleged public corruption in Cuyahoga County. If anything, the fact that other judges have declined to transfer cases identified by the government as related

demonstrates that the government has no control over the decision to transfer.[6] *See, e.g., Sinito*, 750 F.2d at 514 (rejecting defendant's complaint as to the transfer of his case under a local rule where there was no evidence that the government played a role in the assignment).

Additionally, the record also shows that many judges, including the undersigned, have chosen to transfer cases arising out of the same FBI investigation under the related case rule.[7] *See, e.g., United States v. Dimora,* Case No. 1:10CR387, originally assigned to the undersigned, transferred to Judge O'Malley (Doc. No. 27) on September 16, 2010; *United States v. Terry*, Case No. 1:10CR390, originally assigned to Judge David Dowd, transferred to Judge O'Malley (Doc. No. 10) on September 16, 2010; *United States v. Calabrese*, Case No. 1:11CR437, originally assigned to Judge Donald Nugent, transferred to the undersigned (Doc. No. 22) on October 11, 2011; *United States v. Mohammad*, Case No. 1:10CR389, originally assigned to Judge Nugent, transferred to Judge O'Malley (Doc. No. 9) on September 17, 2010; *United States v. Russo*, Case No. 1:10CR384, originally assigned to the undersigned, transferred to Judge O'Malley (Doc.

---

[6] Forlani also looks to the timing of the transfer as taking place after Judge Gwin held the pre-trial hearing, opining that "[s]uch a hearing before Judge Gwin would have been entirely unnecessary had he been contemplating transferring the case to Akron." (Doc. No. 46 at 3.) The determination as to whether a case should be transferred as a related case is a deliberative process requiring both the transferring judge and the recipient judge to perform a due diligence in examining the respective records, factual accusations and evidence. Especially in cases involving numerous charges and extensive discovery, such as these public corruption actions, it is not uncommon for a court to conduct numerous hearings and conferences before reaching the conclusion that a case is related to an earlier filed action. For example, Judge Nugent issued a trial order and conducted two pre-trial hearings before transferring one of the cases arising out of the FBI's investigation in Cuyahoga County to the undersigned. (*See, e.g., United States v. Calabrese*, Case No. 1:11CR437, Doc. Nos. 11, 19, 21.)

[7] The fact that the government identified the two lead cases, *United States v. Dimora*, Case No. 1:10CR387, and *United States v. Russo*, Case No. 1:0CR384, both originally assigned by random draw to the undersigned, as related to cases previously filed and appearing on Judge O'Malley's docket, dispels the notion that the government was interested in steering cases to the undersigned.

No. 3) on September 19, 2010. Clearly, these transfers underscore the fact that the decision to transfer is made on a case-by-case basis by the judges assigned to the two potentially related cases.

### III. CONCLUSION

Having reviewed the entire record, the Court comes to the inescapable conclusion that this case was properly transferred to the undersigned as a related case under the Court's local criminal rules. There is no reason, therefore, to return this case for reassignment under the random draw.

**IT IS SO ORDERED**.

Dated: February 3, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**