## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:11CR491 |
| | ) | |
| | ) | |
| | ) | JUDGE SARA LIOI |
| PLAINTIFF, | ) | |
| vs. | ) | |
| | ) | OPINION & ORDER |
| | ) | |
| MICHAEL FORLANI, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is defendant Michael Forlani's "Emergency Motion for Immediate Discovery of Title III Line Sheets and Any Written Progress Reports." (Doc. No. 58.) The government was given a shortened time in which to respond and has filed an opposition to the motion (Doc. No. 60), and defendant Forlani has filed a reply. (Doc. No. 61.)

Beginning in December 2007, and in connection with its investigation into alleged public corruption in Cuyahoga County, Ohio, the government sought and received permission to intercept wire communications on ten separate telephone lines and cellular phone numbers. On January 4, 2012, the government disclosed to defendant Forlani the calls intercepted from these wiretaps, which consisted of "64,235 audio files representing just over 45 gigabytes of data." (Doc. No. 58, Page ID # 602.) Forlani acknowledges that, in addition to the calls, he also received from the government spreadsheets, which contained certain information relative to these calls. According to the government, these spreadsheets, which were produced in a searchable format, included

for each call: (1) the session number; (2) the date and time of the call; (3) the duration of the call; (4) the direction of the call (incoming/outgoing); (5) the number calling the target line; (6) the call participants; and (7) the agent's designation of the call as pertinent or non-pertinent.

Forlani now seeks an order compelling the government to produce the progress reports that were generated during the course of the wiretaps, as well as the line sheets, which he claims "contemporaneously summarize the content of the intercepted communication[.]"[1] (Doc. No. 58, Page ID # 602.) He offers the same justification for each type of discovery sought. Specifically, he argues that, given the amount of discovery relating to the wiretaps, he needs the progress reports and the line sheets in order to properly evaluate the recorded conversations to determine whether they contain any exculpatory evidence, or whether they should be the subject of any pretrial motions. The pretrial motion deadline is July 20, 2012. He also claims that the requested information is critical to the preparation of a defense to the charges in the indictment.

1. Production of Progress Reports

Forlani seeks to compel the government to provide copies of progress reports that were submitted in compliance with the provisions in each of the orders authorizing interception of wire communications. A judge issuing a wiretap order under Title III may require that periodic reports be filed to aid the judge in determining "what progress has been made toward achievement of the authorized objective (of the wiretap) and the need for continued interception." 18 U.S.C. § 2518(6). The statute does not

---

[1] In addition to the line sheets, Forlani also seeks the "monitors' call logs." (Doc. No. 58, Page ID # 603.)

require the submission of such reports, and it is up to the issuing judge to determine whether, and at what intervals, such reports are to be filed.[2] *Id*.

"Courts generally recognize that a defendant's challenge to minimization does not depend on these reports." *United States v. Wright*, 121 F. Supp. 2d 1344, 1350 (D. Kan. 2000). As the court explained in *United States v. Orozco*:

> disclosure of progress reports is not necessary in order to determine whether the government complied with the statutory requirements of 18 U.S.C. § 2510, *et seq.* Progress reports are, for the most part, a summary of information already provided to defendants, i.e. the tapes, summaries and logs. Those items already provided to defendants are the original and best sources of information regarding statutory compliance. The applications for orders authorizing interception are the best sources of information regarding statutory compliance. The applications of orders authorizing interception are the best sources of information to bolster an argument that the government lacked initial cause to seek such orders. The Court does not see how progress reports issued after wiretaps have been initiated could reveal improprieties in original applications which must ultimately be reviewed in a motion to suppress based on the knowledge of the government agents as of the date the application was sought. Similarly, it is unlikely that progress reports would uncover material falsity contained in the initial application which would not be evidenced by the application itself or by agents' testimony.

108 F.R.D. 313, 316 (S.D. Cal. 1985); *see United States v. Birdman*, Criminal No. 92-00133-07, 1992 U.S. Dist. LEXIS 12155, at *2-*3 (E.D. Pa. Aug. 14, 1992).

Because these reports are merely summaries,[3] and provide no original information, courts routinely deny requests for such reports when they are sought to challenge the underlying applications and orders. *See United States v. Catanzaro,* 201 F.R.D. 72, 77 (W.D.N.Y. 2001); *see, e.g., United States v. Pray,* 734 F. Supp. 2d 158, 160 (D.D.C. 2010); *United States v. Koschtschuk*, 09-CR-0096(S)(M), 2010 U.S. Dist.

---

[2] The Honorable Lesley Wells, the issuing judge, required the government to provide progress reports on the fifteenth and thirtieth days following the date of the respective orders.

[3] In *Wright*, the court observed that progress reports are really a "summary of a summary, that are the prosecutor's summary of the relevant line sheets which, in turn, are a periodic summary of the monitor log sheets." *Wright*, 121 F. Supp. 2d at 1350.

LEXIS 13105, at *11-*12 (W.D.N.Y. Feb. 16, 2010); *Birdman*, 1992 U.S. Dist. LEXIS 12155, at *4; *Wright*, 121 F. Supp. 2d at 1350. Having been provided with the applications, the orders, and the recordings of the original calls, the defendant already possesses the best source of information within which to evaluate the government's compliance with the statute. As such, he is not entitled to production of the reports to demonstrate a failure to minimize.

Nor is there any basis to believe that the reports will yield exculpatory material required to be disclosed pursuant to *Brady v. Maryland*. Progress reports are merely summaries of other information, and, therefore, "do not provide any statements or exculpatory material not also required to be disclosed in its original form." *Orozco*, 108 F.R.D. at 316; *see Catanzaro*, 201 F.R.D. at 77. Where required, progress reports are offered solely to aid the issuing judge, and the sufficiency of these reports is a matter for the issuing judge. *United States v. Marchman*, 399 F. Supp. 585, 586 (E.D. Tenn. 1975). It is unlikely that the government or its agents included exculpatory evidence in such a report. *See Cantanzaro*, 201 F.R.D. at 77. Moreover, inasmuch as the reports are summaries prepared by law enforcement agents, courts have held that these reports fall within the parameters of Rule 16(a)(2) and are, therefore, excluded from discovery.[4] *See Pray*, 734 F. Supp. 2d at 160; *Catanzaro*, 201 F.R.D. at 77; *Birdman*, U.S. Dist. LEXIS 12155, at *2. The defendant's request for production of the progress reports is, therefore, DENIED.

---

[4] As further evidence that these reports are not discoverable, the Court notes that § 2518(6) does not address the disclosure of progress reports, while §§ 2518(8) and (9) provide for and outline the procedure for disclosure of orders and applications. *See Orozco*, 108 F.R.D. at 316.

2. <u>Production of Line Sheets</u>

Forlani also seeks the production of the Title III line sheets. He claims that discovery of the line sheets (along with the progress reports) is necessary in order to avoid "literally listen[ing] to each call to determine whether the call is relevant to the charges or defense." (Doc. No. 58, Page ID # 603.) In it opposition, the government states that the only information from the line sheets that is not included in the searchable spreadsheets that were produced earlier this year is the name of the monitoring agent and his "synopsis" of the call. The government argues that the name of the agent is not relevant to any possible attack upon the admissibility of the wiretaps, or the wiretap procedure, and Forlani agrees that he does not need this information. (Doc. No. 61, Page ID # 3285.)

As for the monitoring agent's synopsis, the government represent that it is "a summary of portions of a particular intercepted communication, interlineated with notes from the monitoring agents or other agents about investigative decisions, impressions, connections, or strategies." (Doc. No. 60, Page ID # 3276.) The government underscores the fact that the synopsis is not a complete summary of each call, and does not reflect every important topic of conversation. It was prepared as an investigative tool, and not a discovery aid. Given its purpose and incomplete nature, the Court finds that it is unlikely that the disclosure of the monitoring agent's synopsis would eliminate the need of defense counsel to review each call.

Nonetheless, defendant Forlani insists that the line sheets are critical to his preparation of his defense, and cites *United States v. Franco*, 585 F. Supp. 2d 980 (N.D. Ohio 2008), for support. This case is entirely distinguishable. In *Franco*, the government

5

had failed to produce any type of an index to the calls. *Id.* at 981. In ordering the discovery of the monitoring agent's call logs, the court observed that the defense had absolutely no information about the calls. *Id.* Here, defendant Forlani has a wealth of information about the calls, including the participants and the dates of the calls. This information, along with the affidavits supporting the wiretap applications, a very detailed indictment that, in many instances, identifies the relevant phone calls and even reproduces pertinent portions of these calls, and other discovery, is more than sufficient to assist the defense in preparing any pretrial motions or identifying *Brady* material to be used in the defense of the charges.[5]

Given the circumstances surround defendant Forlani's request, the Court finds the analysis in *Wright* more useful. There, in response to a request for the line sheets and monitor logs, the court ordered the government to disclose these items, but provided that the disclosure was not to include the agent's summaries of the calls. The court explained:

> The court concurs with the government that an agent's summary of the call or conversation is protected from discovery, because it is the officer's mental impressions amounting to work product and is an internal document solely prepared for the criminal investigation under Rule 16(a)(2). The defendants have not shown that the information typically found in this segment of the monitor log sheet would be material to their minimization challenge. As far as a call summary containing discoverable information under *Brady* or *Giglio,* the court expects the government will be mindful of these other guiding principles of discovery when it redacts the call summary from a monitor log sheet. Outside of these discovery principles, the decision to redact the call summaries obviously remains a matter within the government's discretion.

---

[5] As the government notes, several defendants charged in this same federal investigation have already filed comprehensive pretrial motions challenging the admissibility of the wiretaps and the sufficiency of the manner in which they were collected. These well-researched motions were filed without the benefit of line sheets or progress reports. *See United States v. McCafferty*, Case No. 1:10CR387, Doc. No. 132; *United States v. Dimora, et al.*, Case No. 1:10CR387, Doc. Nos. 423, 424, 484.

*Wright,* 121 F. Supp. 3d at 1351. *See generally, Pray*, 734 F. Supp. 2d at 160 (The government's "memos and notes are internal government documents exempt from discovery under Federal Rules of Criminal Procedure 16(a)(2).") Likewise, the Court finds that defendant Forlani is not entitled to the monitoring agent's synopsis because it contains the agent's "mental impressions amounting to work product" excluded under Rule 16(a)(2).[6] Inasmuch as he already has in his possession all of the information to which he is entitled, the government will not be required to produce the line sheets. Notwithstanding this ruling, the Court trusts that the government will continue to honor its discovery obligations, including its obligation to provide timely *Brady* material. The Court also expects that the parties will bring any future discovery disputes to the attention of the Court in a timely fashion.

For all of the foregoing reasons, defendant Forlani's emergency motion for discovery is DENIED.

**IT IS SO ORDERED**.

Dated: June 20, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[6] In his reply, defendant Forlani cites *Franco* for the proposition that "the potential need to redact agents' mental impressions is not a valid basis for entirely withholding production." (Doc. No. Page ID # 3287.) The government, however, has not sought to entirely withhold production of all of the information contained in the line sheets, as much of the information has already been provided in the spreadsheets that accompanied discovery. Its objection is to the summary, which contains the mental impressions of the monitoring agents. As the court in *Franco* observed, the court in *Wright* ordered the redaction of this information. *See Franco*, 585 F. Supp. 2d at 983 n. 2.