**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:11CR491 |
| | ) | |
| | ) | |
| | ) | JUDGE SARA LIOI |
| PLAINTIFF, | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL FORLANI, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Defendant Michael Forlani has moved to have the trial in this matter held in Cleveland, Ohio for the convenience of the parties and witnesses. (Doc. No. 79.) The government opposes the motion. (Doc. No. 88.) Because a balancing of the relevant interests weighs against a transfer, the defendant's motion is denied.

I.      **BACKGROUND**

On October 20, 2011, the grand jury returned a multi-count indictment against Forlani. The charges stemmed from an FBI investigation, conducted over a number of years, into allegations of public corruption and conspiracy in Cuyahoga County, Ohio. By the indictment, Forlani has been charged with RICO conspiracy, Hobbs Act conspiracy, substantive Hobbs Act violations, and conspiracy to commit mail and wire fraud and honest services mail and wire fraud. A second defendant, James Dimora, was also charged with RICO conspiracy, but the government subsequently dismissed the charges against him.

Several of the earliest cases brought as a result of the FBI's investigation were randomly assigned to the docket of the Honorable Kathleen O'Malley. By agreement of Judge O'Malley and the transferring judges, and pursuant to the Court's local rules, numerous subsequent cases arising out of the same investigation that were originally randomly assigned to other judges were reassigned to Judge O'Malley as related cases. After Judge O'Malley was elevated to the Federal Circuit, these same cases were reassigned to the undersigned. (*See* General Order 2011-5.) To date, this Court has tried five of these cases, and has taken pleas in several others.

The present case was originally randomly assigned to the docket of the Honorable James Gwin, who set a trial date in this case of December 12, 2011. Following the filing of the government's notice that the present case was related to four other cases on the undersigned's docket, and in accordance with the Court's local rules, Judge Gwin transferred the present case to the undersigned as a related case under Local Criminal Rule 57.9(b)(3). (Doc. No. 30.).

On November 16, 2011, defendant moved for a continuance of the December 12, 2011 trial date. (Doc. No. 33.) The Court conducted a hearing on this and other pending motions, and issued an order granting a continuance. In so ruling, the Court determined that the case was complex, and that the ends of justice served by the continuance outweighed the interest of the defendants and the public in a speedy trial because failure to grant such a continuance would deny defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. (*See* Doc. No. 38, citing 18 U.S.C. § 3161.) The Court reset the case for trial, with jury

2

selection to take place on October 17, 2012 and opening statements to be given on October 22, 2012.

The following day (November 23, 2011), Forlani moved to have the case returned to the random draw. After the parties briefed the issue, the Court entered an order denying Forlani's motion, finding that the case was properly transferred under the Court's local rules. (Doc. No. 52.).

In a telephone conference with counsel on the morning of July 24, 2012, counsel for the government requested that the trial date be moved up by two weeks. Counsel for Forlani advised the Court that they had already spoken with the government about the possible change in the start date and did not object to the government's request. At no time did defense counsel suggest that the earlier trial date would affect trial preparation or the ability to interview potential witnesses. Finding that the parties had agreed to the adjustment of the trial date, the Court granted the government's request, rescheduling jury selection to begin on October 1, 2012, with opening statements to be given on October 9, 2012. (*See* Minute Entry, August 24, 2012.). Literally hours after the telephone conference, defendant Forlani filed a motion requesting a transfer to Cleveland, and citing the change in the trial date as the impetus for the motion.[1]

This Court holds its proceedings in the federal courthouse in Akron, Ohio, and, as has been its practice with the other cases related to the same federal investigation, scheduled this case for trial in Akron. By the present motion, defendant Forlani requests

---

[1]According to the Court's electronic docketing system, the Court's minutes entry from the phone conference was filed at 12:12 PM on July 24, 2012. The present motion was filed later that day at 5:51 PM.

3

that the trial in this matter be held at the federal courthouse located in Cleveland, Ohio. Because the federal courthouses in Akron and Cleveland both are located within the Northern District of Ohio, Eastern Division, Forlani's motion asks this Court to consider the merits of both an intra-district and intra-divisional transfer.

## II.        LAW AND ANALYSIS

Under Federal Rules of Criminal Procedure 18, "the government must prosecute an offense in a district where the offense was committed." *See also* U.S. CONST. AMEND. VI (the Sixth Amendment guarantees "the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . .") However, "there is no constitutional or statutory requirement that a defendant's trial take place in a specific courtroom or *division* within a federal judicial district." *United States v. Erwin*, 155 F.3d 818, 824 (6th Cir. 1998) (en banc) (emphasis in original) (citations omitted); *see United States v. Betancourt*, 734 F.2d 750, 756 (11th Cir. 1984) (same); *see also United States v. Lipscomb*, 299 F.3d 303, 339 (5th Cir. 2002) ("There is no basis for inferring the existence of a constitutional right to trial within the division where a criminal defendant lives or where a crime was committed.").

When setting the place for trial within the judicial district in which the offense was committed, Rule 18 dictates that the Court should give "due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18. In so doing, the Court may consider proximity of the defendant's residence, proximity of witnesses and counsel, docket conditions which bear on whether a defendant receives a speedy trial, and proximity of records and documents. *United States v. Lewis*, 504 F.2d 92, 97 (6th Cir. 1974). "Transfer

4

of a particular case from one place within the district to another place within the district is a matter for the local district judges to decide . . . ." *Lewis,* 504 F.2d at 98. However, the district court must carefully balance the interests identified in Rule 18 in exercising that discretion. *Id. See United States v. Garza*, 593 F.3d 385, 388 (5th Cir. 2010) (citation and quotation omitted); *United States v. Burns*, 662 F.2d 1378, 1382 (11th Cir. 1981).

In support of his motion, Forlani notes that allegations in this case stem from events that are more closely connected to Cleveland than Akron, that the parties (including the defendant) reside in the Cleveland area, and that most (if not all) of the witnesses are from Cleveland and Cuyahoga County.

As to the convenience of the defendant, Court finds that the Cleveland courthouse is only 15 miles (and 14 minutes) closer to the defendant's residence than the Akron courthouse.[2] Of course, "the mere fact that a defendant's home is nearer one trial site than another is insufficient to merit transfer." *United States v. Afflerbach*, 754 F.2d 866, 869 (10th Cir. 1985); *United States v. Scott-Emuakpor*, Case No. 1:99-CR-138, 2000 U.S. Dist. LEXIS 3118, at *36 (W.D. Mich. Jan. 25, 2000) ("Rule 18 does not mandate absolute convenience to a defendant"). This is especially true where, as here, the difference in travel time between the two locales is minimal. *See, e.g., United States v. Cooper*, No. 1:06CR92, 2006 U.S. Dist. LEXIS 92483, at *3 (E.D. Tenn. Dec. 20, 2006) (additional travel time of 17 minutes did not support a change in venue); *Scott-Emuakpor*,

---

[2] According to the mapping program "MapQuest" (www.mapquest.com) defendant Forlani's residence is 21.66 miles from the Cleveland courthouse, and 36.47 from the Akron courthouse. The same cite reports that travel time from defendant's residence to the Cleveland courthouse is 29 minutes, while travel time to the Akron courthouse is 43 minutes.

2000 U.S. Dist. LEXIS 3118, at *36 (one hour additional time of travel by interstate highway did not weigh strongly in favor of transfer).

When weighing the convenience to the defendant, the Court should also consider the ability of family, friends, and other supporters to attend the trial. *See United States v. Stanko*, 528 F.3d 581, 586 (8th Cir. 2008). Defendant has not argued that holding the trial in Akron will prohibit family and friends from attending. Moreover, with less than 40 miles separating Cleveland and Akron,[3] and an easily accessible highway system connecting the two cities, defendant's family and friends who reside in the Cleveland area should find it relatively convenient to attend. In fact, it has been the Court's experience with related cases that it has tried that friends and family of defendants were able to regularly attend the proceedings in Akron. For example, in the *United States v. Dimora*, Case No. 1:10CR387, a trial lasting more than two months, friends and family were in daily attendance for the proceedings. *Compare Stanko*, 528 F.3d at 586 ("Logically, holding defendant's trial approximately 200 miles further than the nearest location permitted for such a trial would influence the ability of family and friends to attend, thus impacting the convenience to the defendant.").

As for defense counsel, lead (retained) counsel is from Chicago, Illinois, and, as such, will be required to travel regardless of whether the trial is held in Akron or Cleveland. Defendant Forlani has also retained local counsel who maintains an office in Cleveland. Because cases in the Northern District of Ohio, Eastern Division, are assigned by random draw to judges with chambers in Cleveland, Akron, and Youngstown, counsel

---

[3] MapQuest reports that the distance between the Cleveland and Akron courthouses is 39.50 miles.

in this division routinely practice in all three communities. *See* Local Criminal Rules 57.9 and 57.10. In fact, a review of electronic court records reveals that, since 2000, defendant's local counsel, attorney John Pyle, has litigated 26 cases in federal court in Akron. Given the ease in which Cleveland-based counsel litigate in Akron, the Court finds that the Cleveland locale provides local counsel with only a marginal advantage over the Akron venue.

It is the convenience of the witnesses and their counsel, however, that defendant posits should govern the Court's consideration of the request to transfer. Forlani explains that when he and his counsel agreed to the government's request to push up the trial date, he lost approximately two weeks of pre-trial preparation time. As a result, he concludes that he and his counsel may need to interview and prepare certain witnesses in the evening after each day of trial. Without any support, he offers his concern that certain unidentified witnesses and their counsel who "might otherwise be willing and able to meet with defense counsel during trial, *may* not be willing to travel to Akron for such a meeting, and, as a result, the government may have an unfair tactical advantage owing to the trial's location." (Doc. No. 79 at 3, Page ID # 3529, emphasis added.).

Importantly, Forlani does not suggest that witnesses will be unable or unwilling to testify at trial in Akron, and fails to explain why a (government or defense) witness would draw the line at traversing the short distance between Cleveland and

7

Akron to meet with the defense team in the evenings during trial.[4] *See United States v. Bartelt*, No. 96 CR 50034, 1997 U.S. Dist. LEXIS 11170, at *8-*9 (N.D. Ill. July 7, 1997) (giving little weight to defendant's "generalized claim" that unknown witnesses might be substantially inconvenienced by a certain venue). Moreover, as set forth above, any Cleveland-based counsel representing these unknown potential witnesses would not find it unusually onerous to represent his or client at such evening sessions in Akron.

In sum, convenience of the defendant, counsel, and witnesses only tips the scales slightly in favor of transfer.[5] Other factors, such as the location of exhibits are actually neutral as the vast majority of the exhibits (comprising almost exclusively documents and wiretaps) were produced by the government in an electronic format and can be easily accessed from any physical venue. *See, e.g., United States v. Miller*, Case No. 06-40068-JAR, 2006 U.S. Dist. LEXIS 86395, at *6 (D. Kan. Nov. 21, 2006) (the fact that the government could make discovery available to defendants in diskette form for ease of access meant that the physical location of the discovery would not weigh in favor of a transfer).

---

[4] While the Court is not privy to the defendant's potential witness list, it is the Court's understanding that many of the same government witnesses that have testified in previous related trials in its court will, again, be called to testify in this case. While many of these witnesses resided in the Cleveland area, the Court does not recall any witnesses for whom the trial location posed a problem, nor does the Court recall instances where travel time for such witnesses, alone, caused delays in the proceedings.

[5] Defendant also suggests that application of the "substantial contacts" test supports a transfer, and cites *United States v. Williams*, 788 F.2d 1213 (6th Cir. 1986) for support. As the Sixth Circuit explained in *Williams*, however, "[t]he substantial contacts test is adopted to aid in the determination of whether venue lies when Congress has not prescribed venue for the offense." 788 F.2d at 1215 n. 3. Unlike the court in *Williams*, this Court is not faced with the question of whether venue properly lies in Akron or Cleveland. Neither party suggests that proper venue cannot lie in both Cleveland and Akron. Nonetheless, to the extent that such consideration is appropriate, the Court finds that factoring into the mix the fact that many of the allegations in the indictment share a closer relationship to Cleveland than Akron does not change the outcome of the Court's balancing.

Balanced against these factors is the interest of the public and the Court in the prompt administration of justice. *See United States v. Ford*, 812 F. Supp. 761, 771 (W.D. Tenn. 1981) ("Adverse affect on the prompt administration of justice is a factor."). The government estimates that the trial in this matter could last more than six weeks. This Court has other civil and criminal cases on its docket that will require attention during this time period. It has been the Court's practice during trials (especially in longer trials) to tend to issues raised in other cases before court sessions, during recesses, and after court has adjourned. If the Court is required to relocate to Cleveland for six weeks or more, it will need to reschedule hearings and conferences in numerous civil and criminal actions—which might implicate Speedy Trial considerations in the criminal cases, and, in all cases, affect the prompt administration of justice.[6] *See United States v. Merrill,* 513 F.3d 1293, 1304-05 (11th Cir. 2008) (affirming the district court's refusal to transfer the case to another venue, which was based on the adverse effect such an action would have had on the trial court's docket); *Lipscomb,* 299 F.3d at 342 ("A district court may consider docket management in its Rule 18 balancing, and docket issues may even outweigh convenience factors that point entirely the other way."); *see e.g., United States v. Tettleton*, Criminal No. 09-00015-01/02, 2009 U.S. Dist. LEXIS 39399, at *6 (W.D. La. May 8, 2009) (docket management weighed heavily against transfer); *Scott-Emuakpor*, 2000 U.S. Dist. LEXIS 3118, at *35 ("Because the Court would be required to spend additional travel and administrative time if the case were [transferred], the Court

---

[6] It might also be possible for the Court to require counsel and the parties in these other cases to appear in the Cleveland courthouse during the duration of the trial. While, as set forth above, the distance would not pose an undue burden on counsel and the parties, the logistics of coordinating this temporary transfer of this many cases would negatively impact the efficient administration of the Court's docket.

would be required to postpone other matters on its docket, including criminal matters with speedy trial considerations, to accommodate Defendant's request.").

Another relevant consideration is the amount of publicity this, and related cases, have received in the Cleveland area. *See Lipscomb*, 299 F.3d at 343 (A court may consider pretrial publicity in deciding a motion to transfer); *Ford*, 812 F. Supp. at 771 (same). Because the cases relating to the federal corruption investigation involved Cuyahoga County public officials, most of the considerable publicity generated has been directed to the Cleveland viewing market. Notwithstanding Forlani's suggestion to the contrary, this case, in particular, has received considerable coverage in the Cleveland press, due, in part, to the fact that Forlani's former co-defendant, James Dimora, was the highest ranking public official implicated in the FBI's investigation.[7] While the Court believes that a rigorous and careful voir dire would permit the seating of an impartial jury in Cleveland—something that the Court would be prepared to undertake if the circumstances warranted it—the fact that prior publicity would pose a concern weighs against transferring this case to what would be a more challenging venue. For all of these reasons,, the Court finds that the slight advantage in convenience gained by a transfer is far outweighed by concerns for the prompt and efficient administration of justice.

That said, the Court tends to agree with the government that the concerns raised by defendant's motion speak more to the question of whether the current trial date of October 1, 2012 will afford the defendant and defense counsel sufficient preparation

---

[7] In fact, the subject of pretrial publicity was raised by Dimora in the earlier action in which he was charged. *See United States v. Dimora*, Case No. 1:10CR387. While the Court denied Dimora's motion to transfer the case outside of the jurisdiction of the Northern District of Ohio, it based its decision, in part, on the fact that the publicity in Akron and the surrounding areas, where the trial was to take place and where potential jurors would be drawn, had been considerably less than that focused on Cleveland.

10

time than it does to the inconvenience of the current venue. The Court was prepared to delay the start of this trial until October 17, 2012, and only agreed to move up the date because both sides represented that they agreed to the change. While defendant and his counsel still have two months before trial, and seven days between jury selection and opening statements, in which to prepare for trial, the Court will consider any reasonably supported motion to return the start of trial to October 17, 2012. Any such motion should be filed within seven (7) days of the filing of this order so that the Court may make proper scheduling arrangements in this and other cases.

**III.      CONCLUSION**

Thus, after balancing the statutory factor of convenience with the prompt administration of justice, the Court hereby denies defendant's motion to transfer this case to Cleveland. Defendant is, however, granted leave to file a motion for a continuance of the trial date within seven (7) days of the filing of this order, should he and his counsel believe that such a motion is warranted.

**IT IS SO ORDERED**.

Dated: August 14, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**